IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| PERRY L. TATMON, | ) <br> ) |
| Plaintiff, | ) Case No. 1:08-cv-00695-BLW-MHW <br> ) |
| v. | ) **REPORT AND** <br> ) **RECOMMENDATION** |
| JAMES D. HARTLEY, LONNIE WATSON, SANDRA R. PENNYWELL, ELLEN GREENMAN, ERICA WIENSTEIN, DOCTOR S. SURYADEVARA, KATHY JONES, Y. PAIK, J. PAPPENFUS, JULIE DUKES, RICHARD MERRILL, DELACRUZ, MYORAL, CHABAK, E. EVERETT, AVALA, LORRAINE AVALOS, | ) |
| Defendants. | ) |

Currently pending before the Court are the following motions: Defendants Avalos, Chabak, Dela Cruz, Dukes, Everett, Greenman, Hartley, Jones, Mayoral, Merrills, Pappenfus, Pennywell, Watson and Weinstein's Motion for Summary Judgment (Dkt. 96); Defendant Paik's Motion for Summary Judgment (Dkt. 97); and Defendant Suryadevara's Motion for Summary Judgment (Dkt. 98).

**Report and Recommendation - 1**

# REPORT

## I.
## BACKGROUND

Plaintiff Perry L. Tatmon ("Plaintiff"), a prisoner at Avenal State Prison ("ASP"), brings this complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants acted with deliberate indifference to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. The Defendants include James D. Hartley, Lonnie Watson, Sandra Pennywell, Ellen Greenman, Erica Weinstein, Sampath Suryadevara, Kathy Jones, Young Paik, John Pappenfus, Julie Dukes, Richard Merrills, Rodolpho Dela Cruz, Fabiola Mayoral, Steven Chabak, Estelle Everett, and Lorraine Avalos.

Plaintiff's Complaint alleges that he suffered a severe injury to his left hip on November 11, 2002 at Pleasant Valley State Prison. He was transferred to ASP on April 29, 2003. Plaintiff alleges that while he was housed at ASP, Defendants were deliberately indifferent to his hip injury, including delayed treatment, improper treatment and failure to provide physical therapy after hip surgery. He alleges that he attempted on several occasions to get treatment for his hip and has filed several 602 inmate appeals. Plaintiff also alleges that in January 2005, he injured his left foot, breaking a bone of the heel and damaging the Achilles tendon.

**Report and Recommendation - 2**

## II.
## DISCUSSION

A. **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th

**Report and Recommendation - 3**

Cir. 1988). In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

**B.   Material Facts**

Plaintiff is an inmate incarcerated at Avenal State Prison ("ASP"). Defendant Greenman has been the Chief Medical Officer at ASP from September 2007 to present. Defendant Weinstein worked as the Health Care Manager at ASP from March 2007 until November 3, 2007. Defendant Pappenfus was employed as a physician and surgeon at ASP from 1991 to 2006. Defendants Mayoral and Dela Cruz are Licensed Vocational Nurses (LVNs) at ASP. Defendants Everett and Chaback are physical therapists at ASP. Defendant Merrills is a registered nurse employed at ASP. Defendant Avalos is a medical assistant in the optometry clinic at ASP. Defendants Hartley and Watson were

**Report and Recommendation - 4**

wardens at ASP and Defendant Pennywell worked as Facility Captain and Acting Associate Warden at ASP. Defendant Jones was a Health Care Service Administrator at ASP from February 2007 to February 2009. Defendant Dukes was a health records supervisor at ASP. Defendant Suryadevara was Chief Medical Officer at ASP from May 8 through December 31, 2006. Defendant Paik is an outside referral orthpedic specialist who performed left hip surgery on Plaintiff following a referral from ASP medical staff.

On November 11, 2002, Plaintiff injured his left hip and left rib cage while playing basketball at Pleasant Valley State Prison. He was taken to the emergency room and seen by Dr. Kim, M.D. X-rays were taken and Dr. Kim interpreted them as showing a fracture of the femoral neck. Plaintiff was transferred to the community hospital facility off prison grounds against his wishes.

At San Joaquin Community Hospital, Plaintiff was seen in the emergency room by Dr. Greenstein, M.D., who concurred that there was a left femoral neck fracture. Dr. Greenstein discussed the consequences and possible complications of not treating the condition but Plaintiff refused any treatment, including surgical intervention and was transferred back to the prison. The official x-ray report of November 11, 2002, read by radiologist Richard Peterson, M.D. was mild osteoarthritis of the left hip, no fracture was seen, which contradicted the initial interpretation of the x-rays by Dr. Kim at the prison emergency room.

On November 12, 2002, Plaintiff was transferred back to San Joaquin Community Hospital for reevaluation of his left hip by an orthopedist. Dr. Vahdatya Amirpour, an

**Report and Recommendation - 5**

orthopedist, examined Plaintiff on November 13, 2002. Plaintiff complained of pain over the left iliac area and denied any problems with the pelvis or hip in the past. Dr. Amirpour reviewed the x-ray and did not see a fracture but instead osteoarthritis and deformity. He recommended rest, ice packs, pain control and gradual mobilization; he did not recommend surgery. Plaintiff was discharged and given the medication Celebrex.

Plaintiff has a congenital problem known as femoral acetabular impingement which was a relatively new diagnosis as of 2002, especially to non-orthopedists. It can cause osteoarthritis. The November 11, 2001 x-ray showed significant osteophytes growing off the acetabulum and the femoral neck. Dr. Kim and Dr. Greenstein misread the films. Dr. Amirpour correctly diagnosed osteoarthritis. (*See* Defendants' Statement of Facts, Dkt. 96-3, ¶¶ 68-79).

Plaintiff was transferred to ASP on April 20, 2003. On May 29, 2003, Plaintiff had a follow-up x-ray of his left hip with no fracture seen. Between this date and November 12, 2004, Plaintiff was given multiple chronos for light duty due to his hip injury. At a February 27, 2004 follow-up, Plaintiff reported that his hip was doing well. He missed physical therapy visits on November 20, 2004 and November 26, 2004.

On November 29, 2005, Plaintiff had additional x-rays taken of his hips. The impression was degenerative joint disease of both hips. Between March 9, 2006 and March 8, 2007, Plaintiff was given a chrono for cane use. He was given another chrono for a cane between April 28, 2006 and April 27, 2007.

On November 3, 2006, Plaintiff was referred to University of California Davis

**Report and Recommendation - 6**

orthopedics for evaluation of his hip. Dr. Tanji recommended an MRI which was read as unremarkable. On April 9, 2007, Plaintiff was seen by Dr. Paik for evaluation of persistent left hip pain. Plaintiff complained of worsening left lip pain which interfered with movement. X-rays taken showed diffuse bilateral degenerative joint disease. Dr. Paik diagnosed bilateral hip degenerative joint disease, left hip greater than right. Dr. Paik recommended surgical intervention, hemiarthroplasty versus total arthroplasty. On May 23, 2007, Plaintiff underwent left hip hemiarthroplasty, with no complications. During surgery, Dr. Paik noted that the acetabular cartilage appeared to be in good enough condition to accept a hemiarthroplasty. At a follow-up visit with Dr. Paik on June 18, 2007, Plaintiff showed improved range of motion and strength in the left leg. X-rays showed good alignment and seating of the prosthesis. Dr. Paik recommended that Plaintiff perform a self-administered home exercise program for range of motion and strengthening, including walking and cardiovascular exercise.

On August 19, 2007, Plaintiff was seen for complaints of hip pain and referred for physical therapy. On August 21, 2007, Plaintiff attended physical therapy and was given cane instructions as well as instruction on self-directed exercise.

On September 10, 2007, Plaintiff saw Dr. Paik for complaints of left and right hip pain. Plaintiff showed near complete range of motion and strength in his left leg. Plaintiff was noted to have no acute distress and to be walking with a steady gait. Dr. Paik advised observation for the left hip and advised future right hip surgery might be necessary. Plaintiff underwent physical therapy in July and August 2008.

**Report and Recommendation - 7**

On November 10, 2008, Dr. Paik recommended conversion to total hip arthroplasty which Plaintiff underwent on November 19, 2008. There were no complications in the surgery. Plaintiff failed to appear at Dr. Paik's office for any post-operative visits. Dr. Paik has not seen or treated Plaintiff since his November 2008 hospital discharge.

On March 20, 2009, Plaintiff reported that his pain was so minimal that he did not even want Tylenol. On April 20, 2009, Plaintiff denied any pain and was independent with daily living activities.

Regarding Plaintiff's allegation as to his ankle, and foot on November 3, 2006, Dr. Tanji noted an os trigonum, a shelf of bone extending from the posterior surface of the talus, possibly fractured. Plaintiff related that his ankle would occasionally lock, but denied any trauma to the ankle. An MRI was ordered to rule out fracture of the osteophyte involving the Achilles tendon. The MRI showed a possible interstitial tear of the Achilles tendon. The MRI was not conclusive.

On July 27, 2007, Dr. Castillo referred Plaintiff to a podiatrist. Plaintiff saw a podiatrist, Dr. Harvey, on August 27, 2007. The doctor noted hypertrophy of the posterior aspect of the left calcaneus and tendonitis. A heel lift was suggested but declined by Plaintiff. Dr. Harvey indicated concern about a drop foot and exercises to strengthen the area were ordered. Dr. Harvey indicated that Plaintiff should be rescheduled for re-evaluation in two months or at the next Podiatry clinic.

The form of treatment for os trigonum, a fracture, would require the need for

reduced activity which can be achieved by simple patient compliance or a boot with or without an orthotic.  The goal is to reduce the level of activity to allow the fragment to heal; surgery is not advised.  In the case of an interstitial tendon tear, the first choice of treatment is a heel lift to reduce tension in the tendon.  (Zimmerman Decl., Dkt. 96-4, ¶ 12.)  Plaintiff rejected this recommendation.  (*See* Defendant's Statement of Facts ¶ 127.)  The second choice of treatment is a boot to reduce the level of activity.  In the case of an osteophyte, the recommended method of treatment is reduced activity.  A heel lift over two to three months would have resolved the problem.  On April 15, 2009, boots and supports were issued by Birkholm's Orthopedic services.  On August 28, 2009, it is reported that Plaintiff wanted a different style of boot and the request would attempt to be accommodated.  On August 12, 2009, Dr. Enamoto noted that boots with orthotics were ordered and provided but Plaintiff reported they did not make him feel like his legs were equal.

As for Plaintiff's denial of medication claims, there are no medical records indicating that Plaintiff was ever denied medications.  He was not on any large amount of pain medication and there is an absence of evidence regarding treatment or complaints following alleged denials of medication.  On August 4, 2007, Defendant Dela Cruz provided medication to Plaintiff.  Plaintiff did not come to the pill line on August 5 or August 6, 2007.

## C.     Eighth Amendment Standard of Law and Discussion

Based on the medical history detailed above,  Defendants assert that there is no

**Report and Recommendation - 9**

evidence of deliberate indifference and the undisputed evidence shows that Plaintiff received appropriate medical care for his complaints.  Any alleged delay in receiving treatment did not result in harm to his condition and disagreement with the diagnosis or treatment does not support a claim of deliberate indifference.  Additionally, Defendants assert the claims against Greenman, Hartley, Jones, Merrills and Weinstein fail as a matter of law because there is no respondeat superior liability for a § 1983 claim and there can be no constitutional liability for review of inmate administrative appeals.

   To state an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

   Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could

**Report and Recommendation - 10**

be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). The Ninth Circuit has clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

Additionally, "liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

**Report and Recommendation - 11**

When a defendant's only involvement in the case is review of inmate appeals this cannot serve as a basis for liability under § 1983. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005). *See also Spruill v. Greeno*, 372 F.3d 218, 236 (3d Cir. 2004) (non-physician defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. . .")

### 1. Defendants Hartley, Watson and Pennywell

Defendant Hartley and Defendant Watson were the wardens at ASP. Defendant Pennywell was Facility Captain and Acting Associate Warden at ASP. None of these Defendants have medical training nor were they involved in Plaintiff's medical care or treatment. Defendants cannot be held be liable simply under the theory of respondent superior. Liability only arises when a defendant personally participated in the constitutional violation. *Taylor v. List*, 880 F.2d at 1045. There is no evidence, let alone any allegation, that these Defendants personally participated in the constitutional violations Plaintiff complains of. Without evidence showing that these Defendants were involved with the allegations Plaintiff complains of, summary judgment is proper.

### 2. Defendant Dukes

Defendant Dukes was a Health Records Supervisor at ASP from August 1, 2006 to June 12, 2009. She is not a medical provider and was not involved with Plaintiff's

**Report and Recommendation - 12**

medical treatment. Plaintiff's only allegation against Ms. Dukes is that she did not provide him with medical records. Plaintiff has not alleged any harm from this. There is no evidence that she was deliberately indifferent to his medical needs or denied him medical care. Accordingly, summary judgment should be entered in Ms. Dukes' favor.

### 3. Defendant Jones

Defendant Jones worked as a Correctional Health Service Administrator at ASP from February 2007 to February 2009. Her duties were purely administrative and her involvement with Plaintiff was limited to administrative review of inmate appeals. As a non-physician defendant who only reviewed inmate appeals, Ms. Jones cannot be subjected to liability; only those who participated in the alleged violation may be held liable. There is no evidence that Defendant Jones violated Plaintiff's Eighth Amendment rights and she should be granted summary judgment.

### 4. Defendants Greenman, Weinstein, Suryadevara and Merrills

Defendants Greenman, Weinstein and Suryadevara are physicians who reviewed Plaintiff's inmate appeals. Defendant Merrills is a nurse who reviewed inmate appeals. Because the Court finds below that there was no deliberate indifference to Plaintiff's medical needs, these Defendants cannot be liable for an Eighth Amendment violation due to their involvement in reviewing Plaintiff's inmate appeals. *See George v. Daley*, 414 F.3d 645 (7th Cir. 2005). There is ample evidence that Plaintiff was seen on multiple occasions for his complaints and received appropriate medical care. These Defendants did not intentionally deny or delay medical care to Plaintiff and there is no evidence that

**Report and Recommendation - 13**

they had subjective knowledge and conscious disregard of a substantial risk of serious injury.  Therefore, summary judgment is proper.

   5.   **Defendants Pappenfus and Paik**

Defendant Pappenfus was a physician at ASP who saw Plaintiff on five occasions in 2004.  Two of these occasions were related to hip complaints.  Plaintiff was diagnosed with degenerative joint disease but his hip function was normal, no pain was exhibited and Plaintiff had no difficulty ambulating.  There is no evidence that Defendant Pappenfus misdiagnosed Plaintiff, failed to treat him or provided improper treatment.  Defendant submits the Declaration of Daniel A. Anderson, M.D., an orthopedic surgeon licensed to practice in California.  Dr. Anderson reviewed Plaintiff's medical records and prison records. Dr. Anderson opined that the medical records showed Dr. Pappenfus provided Plaintiff with the appropriate medical care for his complaints.  Plaintiff has not shown any facts indicating that Dr. Pappenfus acted with deliberate indifference and summary judgment should be entered in his favor.

With regard to Dr. Paik, Plaintiff was referred to Dr. Paik for evaluation of persistent left hip pain.  Dr. Paik recommended and performed a left hip hemiarthroplasty on May 24, 2007.  At a follow-up visit with Dr. Paik on June 18, 2007, Plaintiff showed improved range of motion and strength in the left leg.  X-rays showed good alignment and seating of the prosthesis.  Dr. Paik recommended that Plaintiff perform a self-administered home exercise program for range of motion and strengthening, including walking and cardiovascular exercise.  On September 10, 2007, Plaintiff was seen by Dr.

**Report and Recommendation - 14**

Paik again for complaints of left and right hip pain.  On November 10, 2008, Dr. Paik recommended conversion to total hip arthroplasty.  On November 19, 2008, Dr. Paik performed a conversion of Plaintiff's hemiarthroplasty to a total hip.  There were no complications.  Plaintiff failed to appear at Dr. Paik's office for any post-operative visits.  Dr. Paik has not seen or treated Plaintiff since his November 2008 hospital discharge.  There is no evidence that Dr. Paik denied or delayed any medical treatment to Plaintiff.  After determining that surgeries were required for Plaintiff's medical condition, they were performed in a reasonable time.  Further, in support of his motion, Dr. Paik has submitted the Declaration of William Warren Brien, M.D.  Dr. Brien opined that self-administered "home" exercise program advised by Dr. Paik met the standard of care.  There is no evidence that Dr. Paik was deliberately indifferent to Plaintiff's medical needs.  Instead, the evidence shows that he promptly and adequately treated Plaintiff's complaints with regard to his hips.  There is no indication that Dr. Paik had subjective knowledge, or consciously disregarded, an excessive risk to Plaintiff's health and safety.  Dr. Paik did not intentionally deny or delay Plaintiff access to medical care.  Dr. Paik examined Plaintiff and recommended surgery.  Dr. Paik then performed the surgeries without complications.  Summary judgment should be granted for Dr. Paik.

      **6.**    **Defendants Dela Cruz and Mayoral**

There is no evidence that Defendants Dela Cruz and Mayoral, both nurses, refused Plaintiff medication.  On August 4, 2007, Mr. Dela Cruz was working the pill line and provided Plaintiff medication.  Plaintiff did not come to the pill line on August 5 or

**Report and Recommendation - 15**

August 6, 2007. Mr. Dela Cruz was not working the pill line on August 5, August 6 or August 24, 2007. As for Defendant Mayoral, she did not refuse Plaintiff any medication and did not work the pill line from May 2007 to September 2007. Plaintiff has not shown any evidence of delay or denial of medications by these two Defendants. Even if there were a delay, a mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990). These Defendants were not deliberately indifferent to a serious medical need and summary judgment is appropriate.

      **7.**    **Defendants Everett and Chabak**

Defendant Chabak was a contract physical therapist working at ASP. He examined Plaintiff on November 27, 2007. He recommended physical therapy two times a week for three weeks, in spite of his belief that plaintiff was magnifying his symptoms. (Chabak Decl., Dkt. 96-4, ¶ 3). Plaintiff complains that he was not given physical therapy as instructed by Defendant Chabak. Plaintiff's exhibits show that Mr. Chabak saw Plaintiff on multiple occasions for treatment. (Oppositions Exs. 17, 23, 32, 33, 34). Any disagreement with his treatment is insufficient for Plaintiff to establish deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Defendant Everett is a licensed physical therapist at ASP. She saw Plaintiff for physical therapy on a single occasion on August 23, 2007. Ms. Everett instructed Plaintiff on a self-directed exercise and stretching program and emphasized the need for Plaintiff to do self-directed exercises and stretching daily. (Opposition Ex. 13.) After

**Report and Recommendation - 16**

that session, Plaintiff filed an inmate grievance against Ms. Everettt on August 24, 2007. Plaintiff signed a refusal to see a female physical therapist on October 9, 2007 and was subsequently seen by a male physical therapist on October 24, 2007. Ms. Everett provided Plaintiff with physical therapy. She only saw him on the one occasion. There is no evidence to establish that she acted with deliberate indifference. These Defendants provided physical therapy to Plaintiff. His disagreement with any treatment he received does not establish a violation of the Eighth Amendment and summary judgment is proper.

### 8. Defendant Avalos

Defendant Avalos was an optometry clinic medical assistant. She had no involvement in the treatment of Plaintiff's hip and feet problems that are at issue in this case. There are no complaints made by Plaintiff regarding any treatment he received from the optometry clinic and accordingly no claim of deliberate indifference can survive against Ms. Avalos and summary judgment should be granted.

## D. Conclusion

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). There are no facts that suggest any of these Defendants had subjective knowledge of, or consciously disregarded, an excessive risk to Plaintiff's health and safety. The Defendants that treated Plaintiff provided the appropriate medical care in a reasonable amount of time. The affidavits of Dr. Brien, Dr. Anderson and Dr. Zimmerman opined that Plaintiff received appropriate medical care and all aspects of his treatment were well within the standard of medical care. Even if there is a delay in

**Report and Recommendation - 17**

medical treatment, if it does not cause serious harm, there is no Eighth Amendment violation. Medical personnel have been consistently responsive to Plaintiff's complaints. Plaintiff has not presented any evidence to the contrary that would create a genuine issue of fact. Plaintiff's disagreement over his treatment is not grounds for a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Even when construing facts in Plaintiff's favor, Defendants did not take any action against Plaintiff that could be construed as a deliberate indifference to his medical needs. They should be entitled to summary judgment.

## RECOMMENDATION

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that:**

1) Defendants Avalos, Chabak, Dela Cruz, Dukes, Everett, Greenman, Hartley, Jones, Mayoral, Merrills, Pappenfus, Pennywell, Watson and Weinstein's Motion for Summary Judgment (Dkt. 96) be GRANTED;

2) Defendant Paik's Motion for Summary Judgment (Dkt. 97) be GRANTED; and

3) Defendant Suryadevara's Motion for Summary Judgment (Dkt. 98) be GRANTED.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1). The document should be captioned "Objections to Magistrate Judge's Report and Recommendation." The parties are advised that as

**Report and Recommendation - 18**

result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: February 16, 2011

Honorable Mikel H. Williams
United States Magistrate Judge

**Report and Recommendation - 19**